### In re HOLLAND FURNACE COMPANY et al.
### No. 13671.

United States Court of Appeals
Seventh Circuit.
Jan. 27, 1965.

J. B. Truly, Asst. Gen. Counsel, E. K. Elkins, Miles J. Brown, Attys., Federal Trade Commission, Washington, D. C., appointed to prosecute on behalf of the court.

Charles Trynin, New York City, Robert J. Downing, Chicago, Ill., Wendell A. Miles, Grand Rapids, Mich., Stuart S. Ball, Melville C. Williams, Richard M. Keck, Chicago, Ill., for respondents.

Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.

PER CURIAM.

This criminal contempt proceeding was begun on petition of the Federal Trade Commission alleging that respondents "knowingly, wilfully and intentionally" violated and disobeyed an order of this court of August 5, 1959, directed against respondents, by failing and refusing to comply with said order. The Rules to Show Cause issued. Issues were joined by respondents' answers, and this court, without a jury,[1] heard evidence and arguments on the issues.

In the August 5, 1959 order of this court, respondents were "commanded forthwith to obey and comply" with an FTC order, entered July 7, 1958, "until and unless," the Commission order "shall be set aside upon review by this court or the United States Supreme Court, or until further order of this court."

The Commission order of July 7, 1958 was entered at the conclusion of hearings of proceedings against Holland Furnace Company charging unfair methods of competition and deceptive acts and practices in commerce. The order directed "respondent Holland Furnace Company, a corporation, and its officers, agents, representatives, and employees, directly or through any corporate or other device" in selling or distributing Holland products or services, to cease and desist from:

(1) Representing, directly or indirectly, that any of its employees are inspectors or are employees or representatives of government agencies or of gas or utility companies.

(2) Representing, contrary to fact, that its salesmen or servicemen are heating engineers.

(3) Representing that any furnace manufactured by a competitor is defective or not repairable or that the continued use of such furnace will result in asphyxiation, carbon monoxide poisoning, fires, or other damage, or for any other reason, when such is not a fact.

1. Following the Supreme Court's decision in United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), this court denied motions of certain respondents for jury trial.

(4) Tearing down or dismantling any furnace without the permission of the owner.

(5) Representing that a furnace which has been dismantled cannot be reassembled and used without danger of asphyxiation, gas poisoning, fires, or other damage, or for any other reason, when such is not a fact.

(6) Requiring the owner of any furnace which has been dismantled by respondent's employees to sign a release absolving the respondent of liability for its employees' negligence, or of any other liability, before reassembling said furnace.

(7) Refusing to immediately reassemble, at the request of the owner, any furnace which has been dismantled by respondent's employees.

(8) Misrepresenting in any manner the condition of any furnace which has been dismantled by respondent's employees.

The Commission's order, as enforced by this court's August 5, 1959 order, remained in full force and effect and was made permanent by this court's affirmance of the Commission's order on November 7, 1961. Holland Furnace Co. v. FTC, 7 Cir., 295 F.2d 302 (1961). The contempt charges before us cover the period from August 5, 1959 to the entry of the final judgment by this court.

Certain respondents made requests for findings of facts "specially," under 18 U.S.C.A. Rule 23(c), and for "special findings." [2] The court, in lieu of making the "special findings" requested, makes its own findings of fact and conclusions of law on the record and transcript of evidence as follows:

### I.

Holland Furnace Company is a Delaware corporation with principal offices in Holland, Michigan. From April, 1946 to May, 1962 respondent Paul T. Cheff was Holland's president and chairman of its board of directors, owning 6,004 shares of stock. His wife, Katherine Nystrom Cheff, respondent, was a director from March, 1935 to May, 1962, and owned 43,004 shares of stock. Her nephew, respondent Edgar P. Landwehr, was a director from April, 1945 to May, 1962, and owner of 24,410 shares of Holland stock. Respondents John D. Ames, Ralph Boalt, Robert H. Trenkamp, and George Spatta were directors, respectively, from April, 1954 to June, 1961, from April, 1953 to May, 1962, from April, 1953 to July, 1962, and from April, 1951 to February, 1962. Ames owned 200 shares, Boalt 200 shares, Spatta 500–1000 shares, and Trenkamp 200 shares of Holland stock.

Respondent Alvin W. Klomparens was vice president and sales manager from April, 1956 to March, 1960. Richard J. Koerner, respondent, succeeded Klomparens as sales manager, from April, 1960 to April, 1961, and was also vice president from April, 1961 to June, 1962. Respondent Henry Weyenberg was production manager and chief engineer of Holland from April, 1959 to April, 1960 and vice president after 1960. Jay A. Wabeke, respondent, was manager of Holland's Product Service Department from the time of its creation in September, 1959.

The parties to this proceeding stipulated that 164 "attachments" to the contempt petitions, 132 attachments to Holland's answer, and two attachments to the Commission's reply to Holland's answer "may be" received in evidence and be considered by this court as if affiants were witnesses; and that this court "may resolve" any conflicts in the affidavits and determine credibility of affiants. No concessions were made in the stipulation as

---

2. "That, if any or all of the above-named respondents is held to have been in contempt of this Court's order of August 5, 1959, this Court make special findings of fact as to the conduct, events, and circumstances upon which such contempt conviction is based, including findings as to the conduct, events, and circumstances underlying any finding of a violation of that order by any other respondent in this proceeding, including the Holland Furnace Company, if such a violation is an element in the finding that any or all of the above-named respondents has been in contempt."

to truth or falsity of the statements therein and as to whether respondents had power or authority over the "facts" stated in the affidavits or any responsibility for any alleged violations asserted therein. The parties waived right of confrontation of witnesses and right of cross-examination.

In its answer to the petition for contempt, Holland Furnace Company admits that the conduct of its employees in fifteen transactions, involving twenty-five separate violations, involving the following customers of Holland, violated the August 5, 1959 order of this court:

ALLEN, Atlanta, Georgia

BIBEAU, Spokane, Washington

CLAYMANN, Seattle, Washington

CONDON, Denver, Colorado

EHRICH, Albert Lea, Minnesota

EWING, Peabody, Massachusetts

GRUMLING, Mansfield, Ohio

HENDRICKSON, Albert Lea, Minnesota

HOOKER, San Francisco, California

NIELSEN, Chicago, Illinois

SHELLABARGER, Akron, Ohio

STEWART, Seattle, Washington

TAYLOR, Cuyahoga Falls, Ohio

THOMPSON, Cuyahoga Falls, Ohio

WINK, Spokane, Washington

In addition, the testimony shows that the Attorney General of Minnesota brought an action against Holland for unfair and deceptive practices by its employees, and several attorneys general in other states contemplated or threatened similar action. This testimony and the fifteen admitted instances of twenty-five violations by respondent Holland Furnace Company of this court's order of August 5, 1959 represent, exemplify and illustrate the contempt of this court's order during the entire period covered by petition, throughout the entire territory in which respondent Holland Furnace Company operates, according to a regular and usual method by which the corporate respondent has in that period and in that territory sold and offered for sale its furnaces, heating equipment, and parts therefor.

■ We are convinced beyond a reasonable doubt, on the basis of the entire record, that Holland Furnace Company, acting through certain of its officers, agents, representatives and employees, through a "regular and usual" sales practice of its employees in commerce has "knowingly, wilfully and intentionally" violated and disobeyed in one or more instances each of the prohibitions of the August 5, 1959 order of this court; and accordingly we find the Holland Furnace Company guilty of criminal contempt of this court.

II.

■ We are convinced beyond a reasonable doubt, on the evidence in this case, that respondent Paul T. Cheff is guilty of "knowingly, wilfully and intentionally" causing and aiding and abetting in causing, in one or more instances, violations by Holland Furnace Company of each of the eight prohibitions in the August 5, 1959 order of this court.

There is abundant evidence from which we find that Cheff was the dominant head of Holland Furnace Company in the period during which the Holland sales practices subject of the Commission's cease and desist order occurred; that he was the dominant head of Holland when the Commission's hearings were conducted, when the cease and desist order issued, when the August 5, 1959 order of this court was entered, and thereafter until May, 1962; that he was well aware of the condemned sales practices and of the prohibitions in the order of this court; that following the entry of the order Cheff made no bona fide attempt to comply or achieve compliance with the order; that on the contrary he pursued a course of conduct designed to construct an apparent compliance with the order and to devise a defense against charges of violation; that he established the Product Service Department, not to "discipline" the Holland organization or bring about compliance with this court's order, but as a facade behind which to

continue the condemned sales practices; that his appointment of Wabeke to head the department was in furtherance of Cheff's plan to make no substantial change in Holland's sales practices since he could not help but know that Wabeke would not be effective in investigating complaints and disciplining the sales force; that Cheff had no intention of permitting Wabeke to be effective; that he frustrated Wabeke's sincere attempts to accomplish compliance with this court's order by telling Wabeke he had complete authority to discharge salesmen while telling others that Wabeke could only "recommend" discharge; that in the Holland Furnace Company house organ, the "Firepot," Cheff complained of recommendations to discharge salesmen, and that with the knowledge and approval of Cheff, salesmen whom Wabeke had recommended discharging were praised in the publication; that Cheff's occasional meetings with division sales managers, without Wabeke, at which he read from extensive notes to the eight or so in attendance, were apparent rather than real attempts to comply with this court's order; that instead of traveling to meet with Better Business Bureaus in various parts of the country to adjust serious complaints, he sent Wabeke and Weyenberg, neither of whom was suited to the purpose; that Cheff did not himself go out into the field to meet with branch managers or salesmen, or with Wabeke, to induce compliance with the order, and did not take pains to see that his entire sales organization understood the seriousness of compliance, as did his successors in management by bringing 2,000 salesmen to Holland, Michigan; that his bulletin, "The policy we work by," purporting to bring about compliance with the court's order, carefully avoided the word "discharge" and purposely avoided mentioning restraint on unauthorized dismantling of furnaces—that the bulletin was ineffective to influence radical changes in Holland's sales policy, even if, and there is doubt of this, it reached the salesmen; and that Cheff's design in his relations with directors, employees or customers

was to insulate Holland and himself from compliance with this court's order and from guilt for non-compliance.

Cheff made no substantial change after August 5, 1959 in Holland's sales practices or in the fundamental structure underlying the practices. Holland's policy remained the same: working on the replacement of furnaces instead of the original furnace market, operating on a straight commission basis with salesmen, and higher prices for Holland furnaces than its competitors, and realizing profit only on sales of furnaces, not on repairs or cleaning. The loose sales hierarchy, with tenuous relationship between Cheff and the sales managers, between them and the division sales managers, and between them and the branch managers, remained as it had been. Cheff remained aloof from the sales managers, division managers and salesmen. All this contributed to a condition which lent itself to undisciplined sales practices. Moreover, Cheff's unbending attitude toward the Commission's cease and desist order and his confidence in eventually setting it aside were an obstruction to change and to compliance with the court's order.

### III.

Alvin W. Klomparens was employed by Holland in 1937, and served as sales manager and vice president from April, 1956 until April, 1960. He was succeeded by Richard J. Koerner, who was employed in 1948, and was a division sales manager when he was appointed by Cheff as sales manager to succeed Klomparens. After Koerner served in that position for one year, Cheff appointed him also a vice president.

We are convinced beyond a reasonable doubt, by the evidence in this record, that respondents Klomparens and Koerner aided and abetted in causing the proven violations of this court's order of August 5, 1959 during the respective periods of time each served as sales manager.

Both of these respondents were well aware of Holland's sales practices, of the

proceedings before the Federal Trade Commission, and of the August 5, 1959 order of this court. The oral and documentary proof has convinced us beyond a reasonable doubt that each of these respondents willingly lent himself to Cheff's program of maintaining the sales practices which were prohibited by this court's order. They not only aided and abetted Cheff's design by disregarding what obligation the office of sales manager imposed on them in view of the order of this court, but they aided and abetted the violation of that order in an affirmative way. Klomparens edited the "Firepot," and requested, wrote and approved articles directed at the sales force with the intention of neutralizing any attempt by Wabeke's Product Service Department to bring about compliance. And Koerner, after his appointment as sales manager, wrote division sales managers that only he and Cheff had power to discharge and that sales managers must fight "obstacles" such as the Product Service Department and the Better Business Bureaus.

## IV.

We find that the evidence does not prove beyond a reasonable doubt that Henry Weyenberg and Jay A. Wabeke caused or aided and abetted in causing respondent Holland Furnace Company to violate and disobey, and fail and refuse to comply with, the order of this court. They have not committed criminal contempts of this court and of its lawful authority.

During the period covered by the contempt citation herein, respondents Weyenberg and Wabeke had no real or effective power or authority over or responsibility for the sales operations of the company or the actions of its agents, representatives, and employees in connection with the offering for sale, sale, and distribution of its products and services, and no real or effective power or authority over or responsibility for the selection, employment, promotion, demotion, transfer, removal, or discharge of those agents, representatives and employees.

## V.

We find the record shows that directors John D. Ames, Ralph Boalt, George Spatta, and Robert H. Trenkamp were grossly negligent in failing to perform fully their duties as directors of Holland Furnace Company and in relying upon Cheff's assurances that this court's order was not being violated or disobeyed. The gross negligence in this case does not, however, constitute criminal contempt. Trenkamp's position, as attorney for Holland during and after the proceedings before the Commission, imposed upon him a special responsibility, in addition to that which he had as director. It is questionable, to say the least, whether this professional responsibility was discharged by Trenkamp in a manner that reflected fully an awareness of this added responsibility.

There is no justification upon testimony in the hearing and the facts stated in their answers to the petition, which we are taking as true, to infer that these respondents did anything affirmatively or positively to cause or to aid and abet in causing violations of this court's order. We have a reasonable doubt that they knowingly, wilfully and intentionally caused or aided and abetted in causing respondent Holland Furnace Company to violate the order. We find that the evidence does not prove beyond a reasonable doubt that directors Ames, Boalt, Spatta, and Trenkamp are guilty of the criminal contempt charged against them. The rule to show cause as to them is discharged.

What we have said in the next preceding paragraph about the above-named four directors applies equally to Katherine Nystrom Cheff and Edgar P. Landwehr, who filed no answers. The record is virtually silent as to them, and justifies only the inference that they were grossly negligent in their duties. It does not justify an inference that they knowingly, wilfully and intentionally caused or aided and abetted in causing the violation of this court's order. The rule to show cause as to them is discharged.

554

## JUDGMENT ORDER

This cause having come on to be heard in open court on the petition of the Federal Trade Commission, filed March 19, 1962, and the order to show cause as prayed in said petition, which order was issued March 19, 1962, and which order directed Holland Furnace Company to answer said petition and to show cause, if any there be, why it should not be adjudged in criminal contempt of this court, and punished for such criminal contempt, by reason of having knowingly, wilfully and intentionally violated and disobeyed, and failed and refused to comply with an order of this court entered on August 5, 1959, in Cause No. 12451, entitled on the records of this court "Holland Furnace Company, Petitioner, v. Federal Trade Commission, Respondent," all as appears from the said petition of the Federal Trade Commission, and the answer of Holland Furnace Company filed August 15, 1962, and its further answer filed November 27, 1962, a reply to said answer and further answer filed April 18, 1963 by the prosecutors appointed by this court, together with said prosecutors' motion for a finding that Holland Furnace Company has committed criminal contempt of this court and that the court adjudge punishment accordingly, as well as the answer of Holland filed September 30, 1963; and

This cause also having been heard on the verified petition filed April 19, 1963 by the attorneys appointed to prosecute on behalf of the court, which petition named as additional respondents herein Paul Theodore Cheff, Katherine Nystrom Cheff, Edgar P. Landwehr, John D. Ames, Ralph Boalt, Robert H. Trenkamp, George Spatta, Alvin W. Klomparens, Richard J. Koerner, Henry Weyenberg and Jay A. Wabeke; and the answer of said additional respondents filed herein, including the amendments to answer and a supplemental answer, the prosecution's replies to all of said respondents' answers, and the court having reserved its ruling on the motions of respondents Wabeke and Weyenberg that the order to show cause be discharged as to them; and

The court having heard and considered the evidence offered in open court in support of the petitions and the evidence offered by various respondents, and the cause having been submitted to the court thereon, and the court having considered the motions of the various respondents for a discharge of the rule to show cause and having considered the various briefs and memoranda of law filed by counsel representing all respondents and said prosecutor, and the court having this day filed a written opinion which makes findings of fact in this case;

The court finds that, as to the respondents Wabeke and Weyenberg, it has not been proved by evidence beyond a reasonable doubt that they knowingly, wilfully and intentionally caused, or aided and abetted in causing respondent Holland Furnace Company to violate, disobey and fail and refuse to comply with said order of this court entered on August 5, 1959.

As to respondent Katherine Nystrom Cheff, the court finds that it has not been proved by evidence beyond a reasonable doubt that she knowingly, wilfully and intentionally caused, or aided and abetted in causing respondent Holland Furnace Company to violate, disobey and fail and refuse to comply with said order of this court entered on August 5, 1959.

As to the respondents Edgar P. Landwehr, John D. Ames, Ralph Boalt, Robert H. Trenkamp and George Spatta, the court finds that it has not been proved by evidence beyond a reasonable doubt that they knowingly, wilfully and intentionally caused, or aided and abetted in causing respondent Holland Furnace Company to violate and disobey, and fail and refuse to comply with said order of this court entered on August 5, 1959.

IT IS THEREFORE ORDERED that said rule to show cause is hereby discharged as to said Henry Weyenberg, Jay A. Wabeke, Katherine Nystrom Cheff, Edgar P. Landwehr, and John D.

Ames, Ralph Boalt, Robert H. Trenkamp and George Spatta.

And having considered the evidence offered in open court and the admissions made in the answer of respondent Holland Furnace Company, the court finds that it has been proved beyond a reasonable doubt that said respondent knowingly, wilfully and intentionally violated, disobeyed, failed and refused to comply with said order of this court entered on August 5, 1959; that, as to respondents Paul Theodore Cheff, Alvin W. Klomparens and Richard J. Koerner, the court finds that it has been proved beyond a reasonable doubt that they and each of them knowingly, wilfully and intentionally caused, and aided and abetted in causing, the aforesaid violations by Holland Furnace Company of the said order of this court, entered on August 5, 1959; and said Company and Cheff, Klomparens and Koerner have thereby committed criminal contempt of this court and of its lawful authority.

IT IS, THEREFORE, ORDERED that said Holland Furnace Company, Paul Theodore Cheff, Alvin W. Klomparens and Richard J. Koerner be and they are hereby each adjudged in criminal contempt of this court, by reason whereof the court imposes a fine on said Holland Furnace Company of One Hundred Thousand Dollars and costs to be taxed by the clerk of this court, payable forthwith, and that execution issue therefor; and also by reason whereof the court sentences Paul Theodore Cheff to imprisonment for a period of six months and he is ordered committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for said period of six months; and also by reason whereof the court sentences the respondents Alvin W. Klomparens and Richard J. Koerner each to pay a fine of Five Hundred Dollars forthwith, and in default of payment of said fine each is to stand committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment until said fine be paid or until otherwise discharged as provided by law, said fines and costs to be payable to the clerk of this court, either in United States currency or a bank's certified check.

IT IS ORDERED that the clerk deliver a certified copy of this judgment order and commitment to the United States marshal and that the said copy serve as the commitment of those respondents subject to commital as aforesaid.